[Cite as *State v. Stone*, **2014-Ohio-4444.**]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-140028 |
| | | TRIAL NO. B-1300684 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| LARRY STONE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  October 8, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michaela Stagnaro*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Defendant-appellant Larry Stone appeals his convictions for six counts of robbery, stemming from a series of robberies over a two-week period in January 2013. Stone challenges the trial court's denial of his motion to sever and motion to suppress, the removal of a prospective juror for cause, the expert testimony of a police officer, and the sufficiency and manifest weight of the evidence adduced to support his convictions. Because we do not find merit in any of Stone's assignments of error, we affirm the judgment of the trial court.

## Background Facts and Procedure

{¶2} The first of a series of robberies began on January 18, 2013, at Thornton's gas station on Colerain Avenue at 4:30 a.m. Stephanie Whitehead was working at Thornton's when a man entered the store, pulled out a gun, and demanded money. Whitehead recognized the man as a previous customer who had bought Black & Mild cigars. Whitehead complied with the man's demand by opening the cash register and giving him the cash before he fled.

{¶3} On January 21, 2013, at 6:15 p.m., a man wearing a hooded jacket with a flame on the side entered the Fish Express on Harrison Avenue and demanded cash from employee Dale Franklin. The man showed Franklin a gun. When Franklin refused to give the man any money, the man took the entire cash register and ran out the door.

{¶4} The day after the Fish Express robbery, on January 22, 2013, at 3:30 p.m., a man in a black, hooded jacket walked into the Family Dollar store on Burlington Place and approached employee Larry Santana. Santana directed the man to a product in the store, and the man then proceeded to the cash register.

2

When Santana opened the cash register, Santana could see that the man had a gun. The man lunged at the open cash register, grabbed the cash, and ran away.

{¶5} On January 24, 2013, a man in a black, hooded jacket walked into the Sunoco gas station on Spring Grove Avenue at 9 p.m. and asked employee Leyumel Feyissa for Black & Mild cigars. The man then displayed a gun and demanded cash from the register. Feyissa gave the man the money in the register, and the man fled.

{¶6} On January 29, 2013, at 5:40 a.m., Cynthia Hartley was working at the Shell gas station on Calhoun Street. Hartley's fiancée, Amber Johnson, also happened to be at the store during this time. A man walked in and asked Hartley for Black & Mild cigars. The man showed Hartley a gun and demanded cash. Hartley gave the man cash from the register, and he took off. Johnson saw a blue SUV speed away from the station.

{¶7} The day after the Calhoun Street Shell station was robbed, on January 30, 2013, at 2:00 a.m., a man wearing a hooded coat with a black thermal shirt underneath approached a pay window at the Shell gas station on Liberty Street. The man asked employee Laquette Hill for Black & Mild cigars, and then displayed a gun and demanded cash. Hill refused to comply with the man's demands because the pay window was made of bullet-proof glass. The man ran off.

{¶8} Police officers had little information regarding a suspect in these robberies until Officer Kimberly Horning, who had investigated the Liberty Street Shell station robbery, responded to a 911 call where a man had been threatening a woman with a gun. When Horning arrived at the scene, the man identified himself as Stone. Stone admitted that he had a BB gun, which he had thrown in a nearby yard, and Stone stated that he had been arguing with the woman because she had failed to return his blue Dodge Durango. Officer Horning recognized the black

3

thermal shirt and the gold wedding band from the Shell station surveillance video. Officer Horning arrested Stone for aggravated menacing and took him to the police station.

{¶9}   Officer Horning and others interviewed Stone following his aggravated-menacing arrest.  After reading Stone his *Miranda* rights, the officers questioned Stone about the series of robberies.  Stone denied involvement in the robberies at first; however, according to Officer Horning, Stone later admitted to using a BB gun in an attempt to rob the Liberty Street Shell station.  According to Officer Horning, Stone stated that he was addicted to crack cocaine, and Stone offered to help police investigate drug dealers in exchange for case consideration.

{¶10}   After his arrest, the police searched Stone's home with the consent of his wife. Police recovered a black bubble jacket and an orange thermal shirt, which matched the clothing worn by the perpetrator in the Sunoco and Family Dollar robberies, as seen on the surveillance videos, as well as a hooded jacket with a flame on the side, which matched the jacket described in the Fish Express robbery.  The police also obtained the consent of Mary Engelman to search her home.  Engleman's son is Stone's friend.  The police recovered an animal-figure coat, which matched the description of the coat worn by the perpetrator in the robbery at the Calhoun Street Shell station, and which can be seen from surveillance video of the Liberty Street Shell station.

{¶11}   The police also compiled a photo array containing Stone's picture to show to the eyewitnesses through a blind administrator.  Whitehead, Franklin, Feyissa, and Johnson identified Stone as the perpetrator of the robberies at Thornton's, Fish Express, Sunoco, and the Calhoun Street Shell station.  Santana

identified Stone as the perpetrator of the Family Dollar robbery, but he could not identify Stone with certainty. Hartley and Hill were unable to identify anyone.

{¶12} A Hamilton County grand jury indicted Stone in a 12-count indictment for robbery, aggravated robbery, and having a weapon while under a disability. Prior to trial, Stone moved to suppress the pretrial identifications made by the witnesses and his statements to police. Stone also moved for separate trials due to prejudicial joinder. The trial court denied all motions.

{¶13} At trial, the state presented the testimony of the witnesses to the robberies. Whitehead, Franklin, Feyissa, Hartley, and Johnson identified Stone in court as the person who had committed the robberies at Thornton's, Fish Express, Sunoco, and the Calhoun Street Shell station. Santana also identified Stone in court as the robber at Family Dollar, but stated that he could not be 100 percent certain. Hall could not identify Stone as the perpetrator of the Liberty Shell station robbery, but she identified the animal-figure coat recovered from Engleman's home as the coat worn by the perpetrator. The state also presented the testimony of the responding and investigating officers, and the surveillance videos from all of the robberies.

{¶14} Engleman also testified for the prosecution. Engleman stated that Stone had been at her home on January 30, 2013, before police had arrived to conduct a search. Stone had been wearing a coat with animal figures that day, which he had left behind at her home. The police had taken the coat.

{¶15} Over Stone's objection, the state presented expert testimony from Officer Alice Stallcup. Officer Stallcup had been asked by the investigating officers to compare the clothing seen in the surveillance videos of the Liberty and Calhoun Street Shell stations to the animal-figure jacket recovered from Engleman's home.

5

Officer Stallcup testified that she worked in the "forensic video unit" for Cincinnati police, and that part of her job entailed analyzing surveillance video of crime suspects. Officer Stallcup testified that she had taken 400 hours of video training, and that 40 of those hours pertained to "comparison work" for video. Officer Stallcup testified regarding the process she used to identify and compare unique characteristics of the jackets, and ultimately determined that the jacket recovered from Engleman's home matched the jacket from the surveillance videos.

{¶16} The state also presented the testimony of Hermann Morris, who claimed that Stone robbed Morris at gunpoint on January 18, 2013, while Morris worked at Rent-A-Center. Stone had stolen Morris's cell phone.

{¶17} Stone made a Crim.R. 29 motion as to all of the counts, but he specifically argued that the state failed to prove that he had used a firearm in the commission of the offenses. Stone argued that, at most, the state's evidence showed that Stone had used a BB gun, and not a firearm. The trial court granted Stone's Crim.R. 29 motion in part and dismissed the aggravated-robbery charges in Counts 7 and 9, and the weapons-under-disability charge in Count 11. The trial court also dismissed Count 6, which related to a robbery of a BP gas station.

{¶18} In his defense, Stone took the stand and denied all involvement in the robberies. He claimed that he had been with his family during the time of each offense. Stone also testified that the blue Dodge Durango registered to his wife, and linked to the crimes, had been in the repair shop until January 29, 2013. Stone admitted that he had been convicted of robbery in 2007 and had been released from prison in September 2012, and that he also had convictions for felony harassment, trafficking in cocaine, misdemeanor obstruction of justice, and robbery in 1994.

Stone also admitted that he had been to Engleman's home where he had taken drugs with Engleman and her son.

{¶19}   The jury acquitted Stone of robbery in Counts 8 and 10, which related to the robbery at Rent-A-Center.  The jury found Stone guilty of Counts 1, 2, 3, 4, 5, and 12, which related to the robberies at the Liberty and Calhoun Street Shell stations, the Sunoco station, Family Dollar, Fish Express, and Thornton's.

{¶20}   The trial court sentenced Stone to four years in prison on each of the six robbery counts, and imposed the sentences consecutively, for a total prison term of 24 years.  Stone now appeals.

## Motion to Sever

{¶21}   In his first assignment of error, Stone argues that the trial court erred by overruling his motion to sever the charges in the indictment for trial.  Stone argues that the evidence in relation to each robbery was not separate and distinct, and that joinder of the offenses in a single trial prejudiced him.  Stone argues that trying the offenses together allowed the state to improperly portray him as a serial robber in violation of Evid.R. 404(B).

{¶22}   Crim.R. 8(A) permits joinder of offenses in a single indictment where the offenses are "of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."  Crim.R. 8(A).  In each offense, Stone, while wearing a hood, walked up to a store employee, displayed a gun, and demanded money from the cash register.  In four of the robberies, Stone asked the employee for a Black & Mild cigar.  Thus, the offenses in Stone's indictment were "of the same or similar character," so that joinder was proper under Crim.R. 8(A).

**{¶23}** Even if joinder is proper under Crim.R. 8(A), if joinder will prejudice a defendant, Crim.R. 14 provides that a court must order separate trials. When a defendant alleges prejudicial joinder, the state can rebut the defendant's allegations by demonstrating that the evidence related to each count is "simple and direct." *State v. Kennedy*, 2013-Ohio-4221, 998 N.E.2d 1189 (1st Dist.), quoting *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990).

**{¶24}** The state negates Stone's claim of prejudice by arguing that the evidence pertaining to each robbery offense was simple and direct. We agree. Each robbery occurred at a separate location and involved different victim-employees. Although the crimes were similar in character, the jury could distinguish among each robbery. The jury even acquitted Stone of the two counts related to the Rent-A-Center robbery. Therefore, the trial court did not err in denying Stone's motion to sever.

**{¶25}** We overrule Stone's first assignment of error.

### Motions to Suppress

**{¶26}** In his second assignment of error, Stone argues that the trial court erred by overruling his motion to suppress (1) the statements he made to police following his arrest for aggravated menacing, and (2) the pretrial identifications made by the robbery witnesses. We review a trial court's findings of fact on a motion to suppress to determine if the findings are supported by some competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We then independently determine whether the facts satisfy the applicable legal standard without deference to the trial court's judgment. *Id.*

**{¶27}** Stone moved to suppress the statements he made to police at the police station after his arrest for aggravated menacing. In particular, Stone argues

that the trial court should have suppressed his statement to Officer Horning where Stone implicated himself in the Liberty Street Shell station robbery. Stone contends that the officers had continued to question him after he had invoked his right to counsel. In denying the motion to suppress, the trial court determined that Stone had invoked his right to counsel by stating, "I'm lawyering up," during the police questioning; however, Stone had then continued the conversation with police by his own initiative.

{¶28} Under the Fifth Amendment, when an accused invokes his right to counsel during a police officer's custodial interrogation, the questioning must stop unless the accused initiates further discussion with police and waives the earlier request for counsel. *State v. Kleingers*, 1st Dist. Hamilton No. C-980764, 1999 Ohio App. LEXIS 2889 (June 25, 1999), citing *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

{¶29} The record demonstrates that Stone waived his *Miranda* rights at the beginning of the police interview. After the questioning turned away from the aggravated-menacing charge to the robberies, Stone invoked his right to have an attorney present, and the questioning stopped. Stone then initiated further discussions by talking to the officers about drug dealers that he knew and the possibility of case consideration. Stone then requested to speak to Officer Horning alone, and he admitted involvement in the Liberty Street Shell station robbery. We believe that, under the facts of this case, the trial court properly determined Stone had initiated conversations with police and had voluntarily, knowingly, and intelligently waived the right to counsel under a totality of the circumstances. Thus, the trial court properly denied Stone's motion to suppress his statements.

9

{¶30} In addition, Stone moved to suppress the witnesses' pretrial identifications. A trial court must suppress a pretrial identification where the identification procedure employed " 'was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " *State v. Woods*, 1st Dist. Hamilton Nos. C-130413 and C-130414, 2014-Ohio-3892, quoting *Neil v. Biggers*, 409 U.S. 188, 197, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). A court employs a two-part test to determine whether suppression is warranted: (1) Was the identification procedure unnecessarily suggestive? (2) If so, was the identification unreliable under the totality of the circumstances? *See State v. Waddy*, 63 Ohio St.3d 424, 439, 588 N.E.2d 819 (1992).

{¶31} Stone argues that the photo-array procedure employed by the officers was unduly suggestive, and, instead, the officers should have shown the witnesses the photographs one at a time under the procedures provided for by R.C. 2933.83. The remedy for an alleged violation of R.C. 2933.83 is cross-examination about the police procedures at trial—not suppression of the witness's identification. R.C. 2933.83(C)(1); *State v. Ruff*, 1st Dist. Hamilton No. C-110250, 2012-Ohio-1910, ¶ 8.

{¶32} Stone also argues that a substantial likelihood of misidentification occurred because the witnesses only saw the perpetrator for a matter of seconds during the robberies, the perpetrator had a hood covering his head, and the identifications occurred days or weeks after the incidents. Because Stone has failed to demonstrate that the photo-array procedure was unduly suggestive, he cannot meet the two-prong test under *Neil v. Biggers*, and this court need not reach the reliability of the identifications. *See Waddy* at 439. Therefore, the trial court did not err in overruling Stone's motion to suppress the pretrial identifications.

{¶33} We overrule Stone's second assignment of error.

**Removing a Prospective Juror Based Upon a Felony Conviction**

{¶34} In his third assignment of error, Stone argues that the trial court erred by removing a prospective juror based upon that prospective juror's prior felony record. Good cause exists to challenge a potential juror if that person's criminal conviction disqualifies the person to serve as a juror. *See* R.C. 2313.17(B)(1); Crim.R. 24(C)(1). A trial court's ruling on a challenge of a prospective juror for cause will not be disturbed on appeal absent an abuse of discretion. *State v. Madrigal*, 87 Ohio St.3d 378, 393, 721 N.E.2d 52 (2000).

{¶35} A convicted felon cannot serve as a juror unless the felon's rights and privileges have been restored through the following: (1) completion of a prison sentence without placement on postrelease control; (2) final release by the adult parole authority; (3) completion of any community-control sanctions. *See* R.C. 2961.01 and 2967.16(C)(1).

{¶36} In this case, the record shows that Prospective Juror No. 3 had been convicted of drug possession on two separate occasions. The prospective juror had been sentenced to prison on the first conviction, and had been sentenced to three years' community control on the second conviction. The record shows that the prospective juror had completed community-control sanctions to the satisfaction of the court as to the most recent drug conviction, but nothing in the record indicated that his rights had been restored on the first conviction. Therefore, we cannot say that the trial court abused its discretion in dismissing Prospective Juror No. 3 for cause.

{¶37} We overrule Stone's third assignment of error.

## Expert Testimony

{¶38}   In his fourth assignment of error, Stone argues that the trial court erroneously permitted Officer Stallcup to testify as an expert witness, and that the error prejudiced Stone's right to a fair and impartial trial.  The trial court permitted Officer Stallcup to offer an expert opinion that the jacket worn by the perpetrator at the Liberty and Calhoun Street Shell station robberies, as seen from surveillance videos, matched Stone's jacket found by police in Engleman's home.

{¶39}   A witness may testify as an expert where (1) the testimony "relates to matters beyond the knowledge or experience possessed by lay persons"; (2) the witness is "qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony"; and (3) the testimony is "based on reliable scientific, technical, or other specialized information." Evid.R. 702.  We review a trial court's determination under Evid.R. 702 as to the admissibility of expert testimony for abuse of discretion.  *Woods*, 1st Dist. Hamilton Nos. C-130413 and C-130414, 2014-Ohio-3892, at ¶ 44.

{¶40}   We need not reach whether Officer Stallcup was properly permitted to testify as an expert under Evid.R. 702, because, even if the trial court erred in permitting Officer Stallcup to testify as an expert, such error was harmless beyond a reasonable doubt where Officer Stallcup's testimony was cumulative of other evidence. *See State v. Brooks*, 5th Dist. Richland No. 2011-CA-59, 2012-Ohio-1725, ¶ 42. As to the Liberty Street Shell station robbery, Stone admitted to Officer Horning that he had been involved, and the eyewitness, Hall, identified the animal-figure coat recovered from Engleman's home as the coat worn by the perpetrator.  As to the Calhoun Street Shell station robbery, one of the eyewitnesses, Johnson, identified

Stone as the perpetrator from a photo array and identified Stone's wife's vehicle as the SUV that she had seen speeding away after the incident.

{¶41}   We overrule Stone's fourth assignment of error.

### Sufficiency and Manifest Weight of the Evidence

{¶42}   In his fifth assignment of error, Stone argues that the evidence adduced to support his convictions was insufficient, and that his convictions were against the manifest weight of the evidence.   Stone contends that the state did not prove his identity as the perpetrator beyond a reasonable doubt.

{¶43}   In reviewing a record for sufficiency, we must determine whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).   In reviewing a challenge to the weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered.  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶44}   As to Stone's identity, in four of the six robberies, eyewitnesses identified Stone from a photo array and identified him in court.   The perpetrator wore distinctive clothing that matched the clothing recovered from Stone's and Engleman's homes.   Stone admitted his involvement in the Liberty Street Shell station robbery.  Stone presented an alibi to the jury, claiming that he had been with his family during each of the offenses; however, none of his family members or anyone else testified in his defense.   Therefore, Stone's argument that his convictions

13

were against the sufficiency and manifest weight of the evidence because the state failed to prove Stone's identity as the perpetrator lacks merit. We overrule Stone's fifth assignment of error.

{¶45} The judgment of the trial court is affirmed.

Judgment affirmed.

**DINKELACKER, P.J.**, and **DEWINE, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.