[Cite as *State v. Ledford*, 2019-Ohio-4367.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-25 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-151 |
| | : | |
| MICHAEL T. LEDFORD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of October, 2019.

. . . . . . . . . . .

DAVID M. MORRISON, Atty. Reg. No. 0087487, Greene County Prosecutor's Office, Appellate Division, 61 Greene Street, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

DANIEL E. BRINKMAN, Atty. Reg. No. 0025365, P.O. Box 302, Bellbrook, Ohio 45305
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Michael T. Ledford pled guilty in the Greene County Court of Common Pleas to aggravated possession of drugs, a third-degree felony. The court imposed two years in prison and recommended Ledford's participation in the Oasis program. For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 2} According to the presentence investigation report (PSI), on November 24, 2017, Fairborn police officers responded to an address in an attempt to locate Ledford to serve a warrant for his failure to appear on a possession of drug abuse instruments charge. While there, Ledford drove into the driveway; a female passenger was also in the car. When the officers pointed their flashlights at Ledford and identified themselves, Ledford began to reverse out of the driveway. Upon being ordered to stop, Ledford complied.

{¶ 3} The officers detained and searched Ledford. A container of marijuana was located in Ledford's front right pocket. A canine arrived, sniffed Ledford's vehicle, and alerted. Officers subsequently found a clear bag on the front driver's side floorboard and a smaller bag behind the front passenger seat; both contained a clear substance that tested positive for methamphetamine. The collected drugs amounted to 3.7 grams. (Ledford's appellate brief contains a report that indicates that 6.3 grams of methamphetamine were recovered.) The car also contained items commonly used to smoke methamphetamine.

{¶ 4} On March 2, 2018, Ledford was indicted on possession of heroin, a felony of the fifth degree, based on an incident that occurred on September 10, 2017,[1] and

---

[1] The record does not contain information about the September 10, 2017 incident.

aggravated possession of drugs, a felony of the third degree, based on the events of November 24, 2017, described above. Ledford was served with the indictment on March 14, 2018, and the court set bond at $2,500/10 percent cash. Counsel for Ledford filed a request for discovery, to which the State responded on April 2, 2018. On April 5, 2018, Ledford sought a reduction in his bond. The court denied the motion, indicating that the probation department recommended against modification of the bond.

{¶ 5} On May 2, 2018, Ledford pled guilty to aggravated possession of drugs (Count 2). In exchange for the plea, the State dismissed the possession of heroin charge (Count 1) and recommended community control with inpatient chemical dependency treatment. The parties agreed that Ledford would be responsible for reimbursing the Fairborn Police Department for laboratory testing fees of $125.

{¶ 6} At the plea hearing, the court told Ledford that a presentence investigation would be conducted, and it set his sentencing for June 22, 2018. The court explained that it wanted Ledford "to participate in this process" and help provide the court with the information it needed to make a decision. The court further told Ledford that it wanted him "to fill out [his] questionnaire honestly, promptly and completely, turn it into the probation department at [his] first opportunity[,] * * * make [himself] available for an interview[,] * * * be very cooperative with them[,] * * * have a great attitude[, and] * * * be clean, sober, and law abiding." The trial court stated that Ledford's participation could "have a lot of bearing" on the recommendation. Ledford agreed to "do all those things."

{¶ 7} On the same day (May 2), Ledford again requested a reduction of his bond. The trial court did not address this motion.

{¶ 8} On May 8, 2018, Ledford posted a $250 cash deposit and was released from

jail. The court later issued a capias for his arrest after Ledford failed to report to the probation department on May 29, 2018, for his presentence investigation interview. The police arrested Ledford on June 3, 2018, and the court set a $20,000 bond. Ledford remained incarcerated during the pendency of his case. The PSI indicates that Ledford did not complete the presentence questionnaire.

{¶ 9} On June 22, 2018, after the presentence investigation, the trial court sentenced Ledford to 24 months in prison, with 57 days of jail time credit. The court recommended Ledford for the Oasis program. The court notified Ledford that he was subject to an optional three-year period of post-release control. The court did not impose a fine, but ordered Ledford to pay court costs and $125 to the Fairborn Police Department for laboratory fees.

{¶ 10} Ledford appeals from his conviction.

## II. *Anders* Appeal Standard

{¶ 11} Ledford's appellate counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). He noted two potential assignments of error, namely that Ledford did not enter his plea knowingly, intelligently, and voluntarily, and that the trial court abused its discretion in imposing a prison sentence rather than community control.

{¶ 12} We informed Ledford that his attorney had filed an *Anders* brief on his behalf and granted him 60 days from that date to file a pro se brief. Ledford responded with a letter and numerous exhibits, raising eight general reasons why his case should be reviewed, which can be summarized as follows: (1) there was a discrepancy between police reports regarding the weight of the drugs, thus raising a question about the degree

of the offense, (2) the drugs should have been sent to a different lab for retesting, (3) there was evidence that the drugs were not his, (4) the aggravated possession of drug charge was based on an illegal search of his car, (5) he should have been provided an opportunity to prove his innocence at a jury trial, (6) no PSI was conducted, (7) the two offenses should have been separately indicted, and (8) his plea bargain was changed from community control to a two-year sentence. Ledford stated that his trial and appellate counsel provided ineffective assistance.

{¶ 13} Pursuant to *Anders*, we must determine, "after a full examination of all the proceedings," whether the appeal is "wholly frivolous." *Id.* at 744; *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). An issue is not frivolous merely because the prosecution can be expected to present a strong argument in reply. *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Rather, a frivolous appeal is one that presents issues lacking arguable merit, which means that, "on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing *Pullen* at ¶ 4. If we find that any issue — whether presented by appellate counsel, presented by the defendant, or found through an independent analysis — is not wholly frivolous, we must appoint different appellate counsel to represent the defendant. *Id.* at ¶ 7.

### III. *Anders* Review

#### A. Pretrial Matters

{¶ 14} As an initial matter, we find no non-frivolous issues related to the events prior to Ledford's guilty plea. A plea of guilty is a complete admission of guilt. *E.g.,*

*State v. Faulkner*, 2d Dist. Champaign No. 2013-CA-43, 2015-Ohio-2059, ¶ 9; *State v. Wheeler*, 2d Dist. Montgomery No. 24112, 2011-Ohio-3423, ¶ 3; Crim.R. 11(B)(1). Consequently, a guilty plea generally waives all appealable errors that may have occurred in the trial court, unless such errors precluded the defendant from knowingly, intelligently, and voluntarily entering his or her guilty plea. *See, e.g., State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraph two of the syllabus; *Wheeler* at ¶ 3.

{¶ 15} In his pro se brief, Ledford raises questions about the amount of the drugs involved, the validity of the search of his vehicle, and whether the drugs belonged to him, as opposed to the passenger in his vehicle. Ledford also claimed that the police did not adequately investigate his case when they failed to fingerprint the baggies of drugs. Ledford has waived his ability to raise these issues on appeal by entering his guilty plea.

{¶ 16} Moreover, to the extent that Ledford believes that his trial counsel provided deficient assistance by failing to file a motion to suppress (to challenge the validity of the search) or to proceed to trial (to challenge the amount of the drugs and who possessed the drugs), any evidence to support such claims of ineffective assistance would rely on matters outside the record. "A claim of ineffective assistance of counsel cannot be asserted on direct appeal if it relies on matters outside the record." *State v. Harris*, 2d Dist. Montgomery No. 27179, 2017-Ohio-9052, ¶ 19.

{¶ 17} Finally, after his arrest, Ledford twice requested reductions in bond, which were denied. However, we find nothing in the record to suggest that the denials of his requests affected, in any respect, his decision to enter his guilty plea.

**B. Ledford's Guilty Plea**

{¶ 18} "An appellate court must determine whether the record affirmatively

demonstrates that a defendant's plea was knowing, intelligent, and voluntary[.]" *State v. Russell*, 2d Dist. Montgomery No. 25132, 2012-Ohio-6051, ¶ 7, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). If a defendant's plea is not knowing, intelligent, and voluntary, it "has been obtained in violation of due process and is void." *Id.* "In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C)." *State v. Brown*, 2d Dist. Montgomery Nos. 24520, 24705, 2012-Ohio-199, ¶ 13.

{¶ 19} Crim.R. 11(C)(2) requires the court to address the defendant personally and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty or no contest and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses, and to require the State to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 20} The Supreme Court of Ohio has urged trial courts to literally comply with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need only substantially comply with those requirements. *E.g., State v. Bishop*, 156

Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 11. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he [or she] is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). In contrast, the trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Clark* at ¶ 31.

{¶ 21} Furthermore, when non-constitutional rights are at issue, a defendant who challenges his or her plea on the basis that it was not knowingly, intelligently, and voluntarily made generally must show a prejudicial effect. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17.

> But "[w]hen the trial judge does not *substantially* comply with Crim.R. 11 in regard to a nonconstitutional right, reviewing courts must determine whether the trial court *partially* complied or *failed* to comply with the rule." (Emphasis sic.) *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 32. "If the trial judge partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect." *Id.* But if the trial court completely failed to comply with the rule, the plea must be vacated. *Id.* Complete failure " 'to comply with the rule does not implicate an analysis of prejudice.' " *Id.*, quoting *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.

*Bishop* at ¶ 19.

{¶ 22} The court conducted a joint plea hearing with Ledford and another unrelated

individual (not the passenger), who was entering a guilty plea for purposes of intervention in lieu of conviction. The record reflects that the trial court fully complied with its obligations under Crim.R.11 as to Ledford, and that Ledford knowingly, intelligently, and voluntarily entered his guilty plea to aggravated possession of drugs, a third-degree felony. The court strictly complied with its obligation to inform Ledford of the constitutional rights he was waiving, and he expressed his understanding. In addition, the court complied with its obligations under Crim.R. 11(C)(2)(a) and (b) with respect to Ledford's non-constitutional rights.

{¶ 23} Ledford raises that his "plea bargain" was changed from community control to a two-year sentence. The record reflects that the trial court explained to Ledford that the State had agreed to recommend community control and that the recommendation of the State was not going to change. The court further stated, however, that "while I may very well follow that recommendation, I'm not bound as the State is. I can either follow it or not follow that." Ledford indicated that he understood. The court then told Ledford that it was going to have a presentence investigation performed so that it could make "the right decision, the appropriate decision" at sentencing. After describing the differences between community control and a prison sentence, the court asked Ledford: "[U]nderstanding that I can't tell you today which one I'm going to impose, but I have to pick from one of those two, do you still want to go forward with your change of plea?" Ledford responded affirmatively. Accordingly, the record demonstrates that Ledford entered his plea after being told that the State's recommendation was not binding on the court and that a prison sentence was a possible outcome. Nothing in the record suggests that Ledford's plea agreement was changed or that Ledford was unaware that

the court was not bound by the State's recommendation.

{¶ 24} Having reviewed the transcript of the plea hearing and the plea agreement, we find no non-frivolous issues related to Ledford's guilty plea.

## C. Ledford's Sentence

{¶ 25} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard.   *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9.   Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.   *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.

{¶ 26} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences."   *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.).   However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12.   *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 27} As part of the plea agreement, the State recommended community control for Ledford.   The State made no statement at the sentencing hearing.   Defense counsel argued at sentencing that Ledford had mental health issues with several diagnoses and

that Ledford had been generally law-abiding for the past 20 years. Counsel stated that, for various reasons, Ledford had stopped taking his medication and began to self-medicate. Counsel explained that Ledford missed his appointment with the probation department "based upon his misunderstanding of the date," and contended that Ledford would benefit greatly from mental health treatment and community control. Ledford declined to make a statement on his own behalf.

{¶ 28} In sentencing Ledford, the trial court recognized that Ledford's criminal history "was a long time ago,"[2] and it told Ledford that it was "not doing anything based upon that." The court stated that the "real question" was whether Ledford was likely to be successful on community control. The court emphasized that "one factor that's important is [the offender's] willingness to be cooperative with the process, because probation isn't really easy." The court told Ledford:

As I told your attorney earlier, and I will say to you, if you may recall, when I accepted your plea, I said, I wanted you [to] fill out your questionnaire, honestly, promptly, and completely, turn it into the probation department at your first opportunity, and schedule an interview date with a probation officer to speak to you about this case.

Those are the only things I ever ask a person who sits there to do as part of the PSI process. You failed to do either one of those.

Now, that is a problem for me, and I saw that because if a person won't do something the Judge tells them to do, what are they going to do

---

[2] The PSI indicates that Ledford had five prior cases, all between 1991 and 1996, and that Ledford was sentenced to prison in four of those cases, for a total of nine years and eight months in prison.

when a simple probation officer tells them to do or not do something; and the probation department recognizes that as well. * * *

{¶ 29} The trial court further told Ledford that it recognized that Ledford had a mental health disability and a significant addiction, which needed to be addressed. The court stated that it was going to impose a prison sentence, but that it was also going to recommend that he enter the Oasis prison program, which is "an intensive drug treatment, with a component for potential mental health assistance to get those drug issues behind you[.]" The court further explained that the Oasis program is a "long-term program" and that it (the court) was imposing a sentence that it believed was "adequate for [Ledford] to be able to complete this program successfully."

{¶ 30} Upon review of the record, we find no non-frivolous claim based on the trial court's imposition of a two-year sentence, with a recommendation for the Oasis program. There is nothing that clearly and convincingly demonstrates that the record does not support the trial court's sentence.

## IV. Conclusion

{¶ 31} We have examined the entire record and conducted our independent review in accordance with *Penson*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300. We agree with appellate counsel that no non-frivolous issues exist for appeal. Accordingly, the trial court's judgment will be affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.

Copies sent to:

David M. Morrison
Daniel E. Brinkman
Michael T. Ledford
Hon. Stephen Wolaver