[Cite as *State v. Thomann*, 2022-Ohio-4264.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220028 |
| | | TRIAL NO. B-2105429 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| RYAN THOMANN, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause
Remanded

Date of Judgment Entry on Appeal: November 30, 2022


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} Ryan Thomann appeals his robbery conviction, after a jury trial, for stealing a purse from Nicole Blohm. Raising five assignments of error, Thomann challenges the trial court's rulings that the photo lineup was not unduly suggestive under R.C. 2933.83 and allowing the in-court identification of Thomann by the victim. He further argues that the conviction was against the manifest weight of the evidence, the trial court lacked jurisdiction to sentence him, and the trial court improperly imposed community-control sanctions after sentencing him to a term of incarceration. For the following reasons, we affirm the trial court's judgment in part, reverse the judgment in part, and remand the cause to the trial court.

### Pretrial Identification

{¶2} Ryan Thomann filed a motion to suppress the photo lineup identification alleging that the administered lineup deviated from the statutory requirements in R.C. 2933.38. Specifically, Thomann alleged that the administrator was not blind or blinded, could see the photos as Nicole Blohm reviewed them, did not properly document the nonidentifications, improperly allowed the witness to view the lineup twice, and did not inform her that the suspect's photo may not be included in the lineup. Thomann contended that the administration of the lineup was so suggestive, there was a substantial likelihood of misidentification.

{¶3} At the hearing on the motion, Chief Bryan Edens, the police chief for the city of Reading, testified that he administered the lineup to Blohm. Edens had been present at the scene after the robbery, but he had no recollection of the description of the perpetrator or knowledge about the subsequent investigation. Edens had viewed a surveillance video of the robbery, but the video was recorded so far from the robbery, that it only depicted an altercation between two individuals.

**{¶4}** The lineup was recorded, and the recording was admitted as an exhibit. Before showing Blohm the lineup, Edens informed her that he would show her the photos twice, and that some of the folders did not contain photos. Blohm told the chief that she had gotten a good look at the man who robbed her, and that he was in his 20's and had pretty skin with close-cut, black hair. The first time she viewed the lineup, she did not identify any of the individuals. The second time she viewed the photos, the recording showed that Blohm remarked that the fifth photo looked similar, but she excluded that individual because the man had blue eyes and the perpetrator had brown eyes. While viewing the sixth photo, Thomann's photo, the following exchange occurred:

Blohm: "This is the closest one, Chief, um however, I see this guy's hair is gray, um."

Edens: "Sometimes these pictures can be aged, you know, cause we have to get what photos we can of them."

Blohm: "This is the closest, the closest guy right there."

Edens: "With what certainty do you feel that could be the person then?"

Blohm: "Maybe 75%. Like I said, Chief, this guy was clean-shaven, a nice straight nose like this, and a very short haircut like this."

**{¶5}** Blohm further explained that she is five feet, five inches tall, and he was only a bit taller than that, and if she could see him in person, it would help. Blohm asked if any of the photos were of the person whose DNA was found on the backpack left at the scene. Edens told her that he did not know. Her final comment was that the perpetrator was clean-shaven, and she wanted to see the man in person because the

photographs did not depict the skin tone, and that was why she described the perpetrator as Latino or Hispanic.

{¶6} The photo of Thomann that was shown to Blohm was taken nine days after the robbery. Thomann had a goatee and a mustache in the photo. Edens was presented with the first lineup shown to Blohm. The administrator of that lineup noted that Blohm described the perpetrator as "clean-shaven" and Hispanic. Thomann's photo did not match that description.

{¶7} The final witness was Blohm. Blohm acknowledged that her description of the perpetrator was a clean-shaven, male Hispanic with very dark hair and no gray, a very short haircut, with no facial hair. The man was nicely dressed in a gray sweat suit and gym shoes. The person who robbed her dropped a backpack at the scene. Prior to the line-ups, Officer Lattier had informed her that DNA had been found on the backpack, and that they had developed a suspect based on the DNA. Admittedly, Blohm wanted to identify the person who robbed her.

{¶8} On cross-examination, Blohm confirmed that the man in the photograph was the person who stole her purse. She had viewed the person twice, once when he walked past her, and once when they were fighting for the purse. She was face-to-face with him and got a very good look at him.

{¶9} After Blohm's testimony, the motion was continued for a decision to allow the court to review the exhibits and read the relevant case law. The court found that Chief Edens met the definition of a blind administrator. Edens advised Blohm that the person may not be included in the lineup, that she should not feel pressured to pick someone, and that he did not know the identity of the perpetrator. Edens utilized the required folder system and provided appropriate instructions. The fact

4

that Edens showed her the photos twice, even though Blohm did not request a second viewing, did not make the lineup impermissibly suggestive.

{¶10} The court further found that Edens did not complete all the forms, but he recorded the lineup which captured all of the required information. Finally, Edens did not give Blohm any cues as to whether she identified the suspect. Considering the totality of circumstances, the court found that the lineup was not unnecessarily suggestive and overruled the motion to suppress.

{¶11} In his first assignment of error, Thomann argues that the trial court erred when it denied the motion to suppress the identification because the photo lineup procedure failed to comply with R.C. 2933.83, was unduly suggestive and failed to result in a reliable identification.

{¶12} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by some competent, credible evidence. *Id.* Accepting those facts as true, the appellate court must then independently determine, without deference to the trial court's judgment, whether the facts satisfy the applicable legal standard. *Id.*

{¶13} "Due process requires suppression of pre-trial identification of a suspect only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Neil v. Biggers*, 409 U.S. 188, 196-197, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). First, the defendant must show that the lineup was unduly suggestive. "A lineup is unduly suggestive if it steers the witness to one suspect, independent of the witness's honest recollection." (Citations omitted.) *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 208. "If the

identification procedure was not unfairly suggestive, any remaining questions as to the identification's reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required." *Id.* "The remedy for an alleged violation of R.C. 2933.83 is cross-examination about the police procedures at trial–not suppression of the witness's identification." *State v. Stone*, 1st Dist. Hamilton No. C-140028, 2014-Ohio-4444, ¶ 31.

{¶14} Thomann first contends that Edens was not a blind or blinded administrator because he was present at the initial crime scene and must have been "aware of the suspect's description." However, Edens testified that he did not recall the initial description, and the video recording confirms that he told Blohm that he was unaware of any suspect's identity. Next, Thomann alleges that Edens was able to view the photos while Blohm was reviewing them due to his proximity to her during the lineup, so he no longer qualified as a blinded administrator. Edens testified that he did not view the photos, and the video does not contradict his testimony. Moreover, Edens directed Blohm multiple times not to choose anyone unless she was certain and not to guess. He emphasized the importance of not implicating an innocent person.

{¶15} Thomann asserts that Blohm did not inform Edens whether photos 1-5 was the person who robbed her, Edens did not note the nonidentifications on the form, and Edens showed her the photos for a second time even though she did not request a second viewing. But the video makes it clear that Blohm shook her head no after first viewing photos 1-5. She studied the sixth photo before closing the folder and did not shake her head no. Although Edens did not note the nonidentifications on the form, the video recording depicts the nonidentifications. On the second viewing, Blohm

informed Edens of the two photos that she thought looked like the man who robbed her.

{¶16} Thomann further claims that Blohm "indicated she was aware that a suspect's picture was in the photo array," but the video reflects that Blohm asked if the lineup included the man who left DNA on the backpack. Edens responded that he did not know. Additionally, Edens instructed her that even if the police suspected a specific individual, the police could be wrong, and she should not feel bad if she did not recognize anyone.

{¶17} Although Edens did not strictly comply with R.C. 2933.83, Thomann did not establish that Eden's deviation from the statute resulted in an unduly suggestive lineup. Because the lineup was not unduly suggestive, it was admissible, and the identification's reliability was an issue for the trier of fact to decide. *See State v. Savage*, 1st Dist. Hamilton No. C-180413, 2019-Ohio-4859, ¶ 36. We overrule the first assignment of error.

### In-court Identification

{¶18} In his second assignment of error, Thomann contends that the trial court erred by allowing Blohm to make an in-court identification of Thomann because the identification was influenced by the suggestive pretrial lineup.

{¶19} Prior to trial, Thomann filed a motion in limine requesting that Blohm be prohibited from identifying Thomann in court. The basis of the motion was the fact that Blohm observed Thomann at the hearing on the motion to suppress, that Thomann was the only male in court, and that Blohm did not positively identify Thomann at the lineup. She merely stated that his photo looked the closest to the perpetrator.

{¶20} The trial court overruled the motion finding that Blohm had previously

testified that she had a good view of Thomann when he walked toward her and when he grabbed her and they were standing face-to-face. Blohm observed him at two in the afternoon while wearing her prescription glasses. At the time, Blohm gave a detailed description of her attacker. Although she described the perpetrator as being younger than Thomann, Blohm also said that he was substantially younger than she was, which was accurate because she was 78 years old. Blohm initially thought he was Hispanic, but further explained at the hearing on the motion to suppress that she was unsure of his nationality and initially believed he was Hispanic because he reminded her of someone who taught her salsa dancing, and that person was Latino. Blohm identified his photograph and confirmed the identity at the suppression hearing. Although the offense occurred 18 months prior, Blohm identified him in the interim during the lineup and the suppression hearing. Under the totality of these circumstances, the court concluded that there was not a substantial likelihood of irreparable misidentification, and that the defense arguments focused on the credibility of the identification, not the admissibility.

{¶21} During the trial, Blohm was asked if she saw the person who attacked her in court. She responded, "Yes," and identified Thomann as her attacker. Later, she was asked why she was certain of the identification, and stated, "He looks exactly like the picture that - - that I was shown. * * * I don't know of any other reason." When asked again if she was certain that Thomann was the man who grabbed her purse, she responded, "Yes."

{¶22} Thomann contends that the trial court abused its discretion when it allowed Blohm to provide an in-court identification because the identification was based on the suggestive photo lineup procedures and not her independent

8

recollection.

{¶23} In-court identifications are admissible "even where the identification procedure is improperly conducted, if the identification comes from 'some independent recollection and observation of the accused by the witness' as established under the totality of the circumstances." *State v. Norman*, 137 Ohio App.3d 184, 201, 738 N.E.2d 403 (1st Dist.1999), quoting *State v. Jackson*, 26 Ohio St.2d 74, 77, 269 N.E.2d 118 (1971). When considering the reliability of an in-court identification, relevant factors to consider include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). When an identification is "the result of observations at the time of the crime," it is admissible. *Norman* at 201.

{¶24} First, we have already concluded that photo lineup was not impermissibly suggestive. Moreover, as pointed out by the trial court, Blohm viewed Thomann twice at the time of the robbery, testified that she was certain that he robbed her, and the length of time between the crime and identification was not significant. Although there were slight discrepancies between Blohm's initial description and Thomann's photograph, any discrepancy would go to the weight of the testimony of the witness, not the admissibility of the identification. *Id.* at 202.

{¶25} Thomann contends that Blohm's trial testimony that she was certain of her identification because "he look[ed] exactly like the picture," established that she had no independent recollection based on her observations of him. However, Blohm

confirmed twice that Thomann was the man who robbed her, and that she was confident of her identification. Accordingly, we overrule the assignment of error.

## Manifest Weight of the Evidence

{¶26} Next, Thomann argues that the conviction was against the weight of the evidence. When considering a challenge to the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We afford substantial deference to credibility determinations because the factfinder sees and hears the witnesses. *See State v. Glover*, 1st Dist. Hamilton No. C-180572, 2019-Ohio-5211, ¶ 30. If a reasonable juror could find the eyewitness testimony to be credible, the testimony is sufficient to support the conviction. *State v. Humberto*, 196 Ohio App.3d 230, 2011-Ohio-3080, 963 N.E.2d 162, ¶ 12 (10th Dist.).

{¶27} Thomann again challenges the reliability of the identification made by Blohm. As previously discussed, the identification procedures were not unduly suggestive. Moreover, any discrepancies in Blohm's description of the robber were subject to rigorous cross-examination. The trier of fact was in the best position to determine Blohm's credibility, and the jury found Blohm's testimony credible. We cannot say that the trier of fact clearly lost its way and created such a manifest miscarriage of justice as to warrant reversal. We overrule the third assignment of error.

## Jurisdiction to Sentence

{¶28} In his fourth assignment of error, Thomann claims the trial court lacked jurisdiction to sentence him because the written jury verdict was not filed and made part of the record in accordance with Crim.R. 31(A) and R.C. 2945.78, rendering the sentence a nullity.

{¶29} Prior to deliberations, the trial court provided the jurors with the verdict forms. After deliberations were complete, the verdict form was given to the trial court and read aloud in open court. The foreperson confirmed that guilty was the verdict of the jury. Then Thomann requested that the jurors be polled. Each juror confirmed that guilty was his or her true verdict. However, the verdict form was not filed and entered on the docket.

{¶30} Because the verdict form was not entered on the docket, Thomann contends that the trial court lacked jurisdiction to impose sentence. The record reflects that the trial court reviewed the verdict form and read the verdict aloud in open court. The jury was polled, and each juror confirmed the accuracy of the verdict. Although the verdict form was not filed, the docket reflects that the verdict, conviction, and sentence were properly journalized in the judgment entry filed on January 13, 2022. Because the verdict was properly journalized, the failure to file the verdict form does not constitute error. *See State v. Wright*, 8th Dist. Cuyahoga No. 93068, 2011-Ohio-3575, ¶ 64, citing *State v. Clark*, 2d Dist. Montgomery No. CA 9722, 1987 Ohio App. LEXIS 5485 (Jan. 6, 1987) (Concluding that "[t]he filing of such forms is a ministerial act and, however important, it does not affect a substantial right when the otherwise perfect record of the proceedings at trial and the final judgment fully disclose the delivery and acceptance without objection of valid verdicts by the jury.").

{¶31} Thomann argues that the failure to file the verdict form nullified the sentencing entry. Thomann relies on an unreported decision from this court in *State v. Cosby*, 1st Dist. Hamilton No. C-860508, 1987 Ohio App. LEXIS 7761 (July 1, 1987). In *Cosby*, this court dismissed an appeal for lack of a final appealable order because the verdict form had not been journalized. *Id.* at *2. However, that decision predates the Ohio Supreme Court's determination that, "A judgment of conviction is a final order subject to appeal under R.C. 2505.02 when it sets forth (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk." *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, paragraph one of the syllabus. Here, we have a final order, and *Cosby* is not applicable. Accordingly, we overrule the assignment of error.

## Sentencing

{¶32} In his fifth assignment of error, Thomann contends that the trial court erred by imposing a stay-away order and recommending, if possible, that Thomann engage in drug-abuse and mental-health treatment and victim-awareness and anger-management programming while incarcerated.

{¶33} "A no-contact order is a community control sanction. A trial court can either impose community control or incarceration." *State v. Beauchamp*, 1st Dist. Hamilton No. C-210340, 2022-Ohio-738, ¶ 17. The trial court imposed incarceration and was not authorized to impose a no-contact order. The state also concedes the error.

{¶34} With respect to the various treatment recommendations, we cannot conclude that the trial court erred in recommending that Thomann participate in the

various programs offered by Ohio Department of Rehabilitation and Correction. *See State v. Ledford*, 2d Dist. Greene No. 2018-CA-25, 2019-Ohio-4367, ¶ 30 (concluding the imposition of a sentence of incarceration with a recommendation for a drug treatment program was not error).

**{¶35}** We sustain the assignment of error in part, and overrule it in part, and remand the cause to the trial court to vacate the no-contact order.

## Conclusion

**{¶36}** We sustain in part Thomann's fifth assignment of error and remand the cause to the trial court with instructions to vacate the no-contact order. We affirm the trial court's judgment in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

**WINKLER,** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry this date.